9492

FARMERS AND MECHANICS BANK OF FLORENCE v.
WHITEHEAD *ET AL.*

(89 S. E. 657.)

1. BILLS AND NOTES — ACTIONS — PRESUMPTION — EXECUTION—INDORSE-
MENT.—Where negotiable paper is taken by a bank before maturity
in the usual course of business, it is warranted in assuming that the
payee's and indorsers' signatures are genuine.

2. BILLS AND NOTES — BONA FIDE PURCHASER — DEFENSES — FORGERY—
WHO MAY RAISE.—A defendant maker cannot object that the payee's
indorsement to plaintiff holder was forged, where the payee does
not raise the point.

3. PRINCIPAL AND AGENT — ACTIONS — PRESUMPTIONS — AUTHORITY. —
Where a third party had possession of a note the day it was made,
and received a part payment upon it, he presumably had authority
from the payee to indorse it.

4. BILLS AND NOTES — ACTIONS — ADMISSIBILITY OF EVIDENCE—FRAUD.—
Where plaintiff had proved himself to be a holder in good faith of
the note sued upon, there was no error in excluding testimony of
fraud in its inception.

5. APPEAL AND ERROR—RESERVING GROUNDS FOR REVIEW—NECESSITY OF
PRESENTING QUESTION BELOW.—Questions not raised below are not
subject to review.

6. APPEAL AND ERROR—EXCEPTIONS—NECESSITY.—Questions not embod-
ied in the exceptions are not subject to review.

7. TRIAL—OFFER OF EVIDENCE.—Where the Court excluded testimony of
fraud in the note's inception until evidence was offered that plaintiff
was not a *bona fide* holder, *held* that defendant should have then
indicated what circumstances rendered plaintiff's good faith uncer-
tain.

8. BILLS AND NOTES—VALIDITY—ATTORNEY'S FEES.—A stipulation in a
note for 10 per cent. attorney's fees is not conclusive as to the amount
due for such services.

9. BILLS AND NOTES — ACTIONS — JURY QUESTION—REASONABLE ATTOR-
NEY'S FEE.—In an action at law upon a note, the amount of a reason-
able attorney's fee is a jury question.

10. INTEREST—RATE AFTER MATURITY.—A note bearing six per cent.
interest, payable annually, bears the legal rate of 7 per cent. after
maturity.

Before PRINCE, J., Florence, April, 1915.   Affirmed.

Action by the Farmers & Mechanics Bank of Florence,
S. C., against J. D. Whitehead and W. L. Whitehead, as

copartners, and others. Judgment for plaintiff, and defendants appeal.

The note sued upon is in the words and figures following:

Lake City, S. C., Jan. 21, 1908.    $1,000.00.    January 21, 1911, for value received, we jointly and severally promise to pay to Bauhard Bros., of Martinsville, Ind., or order, the sum of one thousand dollars at the Farmers & Merchants Bank, Lake City, S. C., with interest at six per cent. (6%) per annum, payable annually; and also, if not paid when due, ten per cent. (10%) additional for attorneys' fees.   J. M. Truluck, A. M. Parker, Jr., P. D. Cockfield, W. B. King, E. M. Lowman, J. L. Stuckey, R. B. Fitch, S. B. Poston, J. D. & W. L. Whitehead, J. M. Eaddy, J. C. Young, A. B. X Young, his mark, S. T. Godwin, F. W. Truluck, W. D. Daniel.

*Messrs. Willcox & Willcox,* for appellants, cite: *As to validity of void note in hands of innocent purchaser:* 1 McMul. 225; 9 Rich. 262; 92 Am. St. Rep. 270; Daniel Negotiable Instruments (6th ed.), secs. 729 and 741; 100 Mass. 18; 80 Hun. 207; 30 N. Y. Suppl. 31; 17 Fed. 575; 91 S. C. 455.   *Notice of fraud:* 91 S. C. 455; 2 Port. 157; 110 Ga. 827; 139 Cal. 246; 14 Fed. 170; 51 S. W. 198; 52 Conn. 274; 27 N. J. Eq. 33; 28 S. C. 143; 8 Fed. 1; 59 N. J. Eq. 225; Cook Corp., sec. 727.

*Messrs. Bass & Williams,* also for appellants, cite: Daniel Neg. Instruments, secs. 664a, 729, 741 and 693; 4 A. & E. Enc. of L. (2d ed.) 252, 253, 257 and 281; 45 S. C. 527; Joyce's Defenses to Commercial Paper, secs. 122 and 456; 139 N. C. 69; 51 S. E. 803; 140 N. C. 640; 60 S. E. 1087; Tiedeman Commercial Paper, sec. 256; 17 Fed. 575; Rice L. 171.   *Proof of endorsement:* 4 A. & E. Enc. of L. (2d ed.) 345; 104 N. C. 640; 53 S. E. 447; 60 S. E. 1087; 52 S. E. 622.   *Burden of proof:* Joyce's Defenses Commercial

Paper, secs. 119, 122; Jones Ev., sec. 49; 29 L. R. A. 638 and 695; 145 Iowa 185; 37 L. R. A. 816; 20 Idaho 669; 22 L. R. A. 1210; 223 Pa. 513; 91 S. C. 455. *Bona fide holder:* Joyce Commercial Paper, sec. 456; 121 N. C. 122. *Circumstances tending to show lack of good faith:* 44 L. R. A. 395; 36 Okla. 510; 7 Crouch 159; 5 Metcalf 201; 142 N. C. 61; 54 S. E. 847. *Bona fides is question for jury:* 18 L. R. A. 142; 150 Mich. 580; 41 L. R. A. 391; 118 Minn. 323; 104 N. C. 33; 10 S. E. 128; 28 S. C. 143; 45 S. C. 519. *Notice to bank discounting paper:* 4 A. & E. Enc. of L. (2d ed.) 307; 60 Fed. 78; 110 N. C. 267; 111 N. C. 516; 22 L. R. A. 718; 136 Iowa 390; 49 L. R. A. 764; 88 S. C. 37; 50 S. C. 259.

*Messrs. Whiting & Baker,* for respondent, cite: 91 S. C. 455; 98 S. C. 218, 220; 87 S. C. 76; 97 S. C. 52; 100 S. C. 353; 101 S. C. 207; 88 S. E. 284; 28 S. C. 148; 27 S. C. 132; 33 S. C. 451, 472; 40 S. C. 151; 50 S. C. 290; 74 S. C. 368; 84 S. C. 463; 94 S. C. 387; 95 S. C. 343, 346. *Interest:* 22 S. C. 139; 33 S. C. 215; 22 S. C. 85 and 89; 2 Daniel Neg. Instruments, sec. 1458; 22 Cyc. 1538; 16 A. & E. Enc. of L. 1040; 59 Am. St. Rep. 463; 63 Am. Dec. 439.

August 10, 1916.

The opinion of the Court was delivered by Mr. Justice Gage.

The plaintiff sued the defendants upon a note for $1,000 which the defendants had executed to Bauhard Bros., of Indiana, and which the plaintiff claimed to be the purchasers *bona fide* in due course of business, before maturity and for value. The defendants alleged that the plaintiff did not buy the note in good faith, in due course, before maturity and for value; that the plaintiff did not have legal title to the note; that the plaintiff took the note with notice of defenses to it; that the note was made to the payees upon representa-

tions which proved to be false; that one of the makers, Daniel by name, had a secret agreement with the payees, but for which he would not have signed, and that such agreement was concealed from the other makers, and they were thereby induced to sign. One witness was sworn for each side, and the Court directed a verdict for the plaintiff, but limited the interest to 6 per cent. from the date of the note to the date of the recovery, and left it to the jury to say how much the attorney's fees should be. On these last two directions the plaintiff has appealed, while from the general directions for the plaintiff the defendants have appealed.

The defendants have made 19 exceptions. They occupy more space than the testimony; they are verbose and tautological to a hurtful degree. We shall not consider the exceptions by name, or in order, but we shall compass the real issues made by the appeal.

Each of the counsel for the appellants has argued but three questions, and they are the same questions. They are these: (1) Was the bank bound to prove the genuineness of the payee's signature on the back of the note; (2) were the defendants entitled to prove fraud in the inception of the note, and would the proof of fraud invalidate the note in the hands of a *bona fide* purchaser; (3) if Ragsdale, president of the bank, had notice of a defect in the note, is such notice chargeable to the bank?

1. The note is negotiable in form, and they who signed it and started it in the currents of trade thereby notified the trade that it was what it purported to be. The payment indorsed on the back of the note was made the same day it was executed. When the note came to the plaintiff the name of the payee was written on the back of it, "Bauhard Brothers, without recourse on us." When a negotiable note comes to a bank's counter in the course of business, and the bank finds the payee's name written on the back of it, the bank does not have to communicate with the payee and ascertain if the indorsement

is genuine.   That would put so great a burden on banks and on its patrons, the public, as to clog the arteries of business. If the bank should have to do that, then it would have to make a like enquiry about every one of half a dozen indorsers, and about the maker, too.   Such a course of business would render a negotiable note as uncertain as a land title, and would unduly harass and delay the public in the transaction of its business.   When a negotiable paper, in the course of business, and before its maturity, is brought by a holder to a bank's counter, the bank is warranted to assume that the signature of the maker and that of the indorsers are what they appear to be.   It is true subsequent events may show that such is not the case; and the bank and the public dealing with it run that risk.   But in the instant case there was no suggestion at the trial that the indorsement of Bauhard Bros.' signature was fabricated; they do not say so, and if they do not say so, what matters it to the defendants? All the makers are interested in is that they shall pay to the right person.   The testimony of one of the defendants is that he made a payment on the note, the day it was executed, to one Ward.   If Ward had the note the same day it was made, and took a payment on it, the presumption of fact is he had a right to sign the payee's name on the back.   Surely if Ward was Bauhard Bros.' agent to take payment from Truluck, then Truluck may not say Ward had no authority to indorse the name of Bauhard Bros.   The indorsement itself shows, by its very words, that it was made to transfer title.   All Truluck, the defendant and witness, said is that the indorsement of the payment and the indorsement of the name of the payees was made at the same time by Ward. Truluck does not modify the meaning of "Bauhard Bros. without recourse on us."   We are, therefore, of the opinion that the bank proved the indorsement, and thereby proved a legal title to the paper.

2. The defendants alleged fraud in the inception of the paper, and stated to the Court they were prepared to offer proof of it. The Court said:

"It is useless to offer any testimony as to fraud as to that note. The only thing you can offer testimony at this time is that it was not acquired *bona fide* before maturity by the holder."

The defendants contended: First, that if the note initiated in fraud, then an innocent holder may not recover, and they cite for authority. *Gaillard* v. *Le Seigneur,* S. C. L. (1 McMul.) 225, and *Mordecai* v. *Dawkins,* S. C. L. (9 Rich.) 262. Those cases are not conclusive of the question made here; in both of them a statute declared that notes like those should be void. The allegation of fraud in the instant case is inconclusive. The facts and circumstances alleged are very meager. What is alleged will not defeat the title of a *bona fide* purchaser. See *Lytle* v. *Lansing,* 147 U. S. 59, 13 Sup. Ct. 254, 37 L. Ed. 78. The defendants contend, again, that had they been allowed to prove fraud, then that would have cast upon the plaintiff the burden of proving good faith, etc. That is true; but the plaintiff proved that in the outstart. They discharged that duty in advance, and did not wait for the reply. Our opinion is the Circuit Court was right in its action, if not in its statement of law before quoted.

The appellants have argued some matters that were not made issues before the trial Court, and are not to be found in the voluminous exceptions, so far as we have been able to comprehend them. They are not, therefore, properly for trial here. They are circumstances which the appellants say tended to disprove *bona fides* in the plaintiff. They are that the bank did not satisfactorily prove the ingredient of value; that one year's interest was past due and unpaid when the bank bought, and that rendered the note nonnegotiable; that the limited indorsement,

"without recourse," was a circumstance to indicate a defect in the paper; and that these three matters ought to have been submitted to the jury.    None of these issues were submitted to the Circuit Court.    The Court distinctly ruled:

"The only thing you (the defendants) can offer testimony (on) at this time is that it was not acquired *bona fide* before maturity by the holder."

The defendants were bound to indicate to the Court what facts and circumstances rendered uncertain the *bona fides* of the plaintiff.

3. The defendants' third ground for a reversal is unsound. The authorities they quote sustain the Circuit Court in holding that when the president of the bank, acting for himself, discounted the note at his bank, if the bank acted in good faith, then Ragsdale's knowledge of a defect in the paper was not imputable to the bank.    More than this, there was no testimony that Ragsdale had any notice of a defect in the note.

4. The plaintiff makes two questions by its appeal: (1) That the Court ought to have allowed it to collect "10 per cent. additional for attorney's fees."    "Is it so nominated in the bond?"    It truly is, but that is not conclusive, as we have often held of late.    The plaintiff, though, says that was an issue for a Court of equity.    It is true if the cause be in equity the allowance of a proper fee may be determined by the Court.    A fact was in issue in a suit to recover money only, and the Court had the power, and was bound, to submit its determination to a jury.    Code, sec. 312.

The last issue in the case is, What rate of interest does the note prescribe?    No argument has been made by the defendants to sustain the ruling of the Circuit Court thereabout.    In our opinion the Circuit Court wrongly construed the note.    The jury was instructed as follows:

"You will note that the note bears annual interest at 6 per cent. from maturity. Just allow 6 per cent. annual interest. It is neither compound nor simple interest. It bears 6 per cent. from maturity until today. I don't think counsel is right in his interpretation of the note when he wanted 7 per cent. after the first year. You will allow interest at 6 per cent. after the note matures."

The note is dated January 21, 1908; was made payable January 21, 1911, "with 6 per cent. per annum payable annually." The interest became payable January 21, 1909, 1910, and 1911; the principal became payable January 21, 1911; the entire debt was then due and payable on that day. Thereafter there was no contract rate for interest, and the law prescribed the rate at 7 per cent. We think no other conclusion can be reached from a plain reading of the words of the paper. No authority needs to be cited when a proposition is plain.

Our judgment is that the judgment below is affirmed, save in the matter of interest last indicated, as to that it is modified.